IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal Action No. 7:19-cr-00027 |
| v. | ) | |
| | ) | By: Elizabeth K. Dillon |
| HAROLD EMANUEL ANDERSON | ) | United States District Judge |

## MEMORANDUM OPINION

Pending before the court is defendant Harold Emanuel Anderson's motion to suppress. (Mot. to Suppress, Dkt. No. 31.) Anderson argues that the court should suppress all evidence seized during a search of his home pursuant to a search warrant issued on February 1, 2019, and executed on February 2, 2019. He alleges that the "warrant was based on an affidavit that was: a. defective on its face; and b. obtained pursuant to a Roanoke City policy and practice calculated to frustrate meaningful judicial review of police conduct and thereby obstruct justice." (*Id.* at 1.) By order entered July 23, 2019, the court granted Anderson's motion with regard to his request for a *Franks*[1] hearing and took the remainder of the motion under advisement.

The parties presented evidence at the *Franks* hearing and have filed supplemental memoranda in support of their positions. For the reasons stated below, the court will grant Anderson's motion to suppress.

## I. BACKGROUND

Anderson is charged in a two-count indictment with knowingly possessing a firearm after having been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1), and with possessing with intent to distribute fifty grams or more of a substance containing methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). (Dkt. No. 12.)

---

[1] *Franks v. Delaware*, 438 U.S. 154 (1978).

According to the affidavit for the search warrant application, Detective Bridges, the affiant, believed Anderson to be in possession of heroin. The affidavit included an address for what was believed to be Anderson's residence and a description of the residence as a "single family dwelling made up of red and white wood siding," with "a set of red steps in the front of the residence that lead up to the front door," and "[t]he number 2126 . . . clearly posted on the front of the residence." (Dkt. No. 31-1 at 4.)

In the space provided in the affidavit for "material facts constituting probable cause that the search should be made," Detective Bridges wrote "See Attachment A," referencing an attached single page. (*Id.* at 5.) The attachment to the affidavit stated that for two months, "your affiant has conducted a narcotics investigation" of Anderson, during which "your affiant has conducted multiple controlled purchases" from him. (*Id.* at 6.) It further stated that in the 72 hours leading up to the search warrant application, Detective Bridges used a confidential informant (CI) to purchase heroin from Anderson's residence.[2] Before the transaction, Detective Bridges searched the CI and did not find illegal narcotics or currency, and he provided the CI with currency from the Roanoke City Police Department (Department). Detective Bridges observed the CI both walking in and exiting the front door of Anderson's residence. After the CI exited the residence, he provided Detective Bridges with a brown substance that field-tested positive for heroin. The CI told Detective Bridges that when he was inside the residence, a person who he knows as Harold Anderson sold him heroin. He also told Detective Bridges that Anderson always had heroin and other illegal narcotics and that he believed there were narcotics,

---

[2] Sometimes referred to herein as the "PC buy." The government noted that it uses the term "PC buy" to indicate a controlled purchase that is used to "freshen up" probable cause for the purpose of obtaining a search warrant. (Gov't Resp. 3 n.1, Dkt. No. 34.)

as well as evidence of distribution, inside the residence.  The CI himself is a narcotic user who is familiar with the appearance and packaging of heroin.  (*Id.*)

Where the search warrant application asks about the informer's credibility or the reliability of the provided information, Detective Bridges stated that he has been employed with the Department since 2011, spent approximately three years on patrol, attended multiple drug courses, and presently serves as a member of the High Intensity Drug Trafficking Area regional drug task force unit.  He made no statements concerning the CI's credibility.  (*Id.* at 5.)

A search warrant was issued by a magistrate at 1:12 p.m. on February 1, 2019, and executed the following day.  (*Id.* at 1–2.)

Anderson moves to suppress all evidence seized during the search of his home.  He bases his motion on several alleged misrepresentations and/or omissions in the affidavit.  The court will focus on three of his arguments here.  First, there is no indication in the affidavit that Detective Bridges used two different CIs—one for the controlled buys and a different one for the later PC buy.  Second, the affidavit did not address the credibility or reliability of either informant who allegedly purchased heroin from Anderson as part of the controlled buys, despite Detective Bridges' knowledge of facts negatively affecting both informants' credibility or reliability.  Third, the affidavit misleadingly provides information weighing on Detective Bridges' credibility and suggests that Detective Bridges "conducted" the controlled buys from Anderson.[3]

---

[3] In his original motion, Anderson further argues that there is no documentation from the PC buy detailed in the affidavit and that the heroin allegedly obtained from Anderson was destroyed without proper documentation.  As the court stated in its prior opinion, "[w]hen determining whether to issue a search warrant the magistrate would not know whether an incident report had been prepared or whether the evidence had been preserved."  (Mem. Op. 10, Dkt. No. 44.)

At the first hearing on Anderson's motion, the court determined that the affidavit for the search warrant is facially valid.[4] Nonetheless, the court further determined that Anderson made a substantial preliminary showing sufficient to obtain a *Franks* hearing on the affidavit's integrity. Specifically, the court held that Anderson made a substantial preliminary showing that Detective Bridges omitted material information from his affidavit for the search warrant with reckless disregard for whether it would make the affidavit misleading.

Having considered the evidence presented at the *Franks* hearing and the supplemental briefs filed by the parties, the court must now determine whether Anderson met his burden of establishing by a preponderance of the evidence that Detective Bridges recklessly or intentionally omitted facts from his affidavit that were essential to the probable cause determination.

## II.  DISCUSSION

### A.  Standard for Suppression of Evidence Pursuant to *Franks*

*Franks v. Delaware* allows a defendant to challenge the veracity of a sworn statement used by law enforcement to obtain a search warrant.  438 U.S. 154 (1978).  "[W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request."  *Id.* at 155–56. This test "applies not only to cases in which an agent includes affirmatively false statements in a warrant affidavit, but also when an agent *omits* relevant facts from the affidavit."  *United States*

---

[4]  The affidavit is facially valid to the extent that it suggests that Detective Bridges himself made controlled buys and then sets forth information about his own reliability and credibility.  But it was not Detective Bridges, but two different confidential informants who made the buys, and no information is offered about their reliability. Under that interpretation, the warrant would not be facially valid.

*v. Lull*, 824 F.3d 109, 117 (4th Cir. 2016) (citing *United States v. Colkley*, 899 F.2d 297, 300 (4th Cir. 1990)).  Courts refer to the subsequent evidentiary hearing as a "*Franks*" hearing.  *Id.* at 114.

If at the hearing the defendant establishes by a preponderance of the evidence that the affiant omitted material facts "with the intent to make, or in reckless disregard of whether they thereby made, the affidavit misleading" and that the omission is "indeed material," the court must grant the defendant's motion to suppress.  *Id.* at 115.

## B.  Anderson Has Met His Burden Under *Franks*

As a preliminary note, this case is similar to *United States v. Lull*, in which the Fourth Circuit vacated a defendant's conviction and sentence based on similar factual omissions from a search warrant application.  824 F.3d at 111.  Although distinguishable in minor respects, the evidence presented at the *Franks* hearing on Anderson's motion to suppress suggests a similar result is appropriate here.  Based on that evidence, and for the reasons set forth in more detail below, Anderson has established by a preponderance of the evidence that Detective Bridges omitted information essential to the magistrate's probable cause determination in reckless disregard of whether the omission would mislead the magistrate.

### 1.  Reckless Disregard

To meet his burden under the first prong of the *Franks* analysis, Anderson must show that Detective Bridges "omitted information with the intent to mislead the magistrate or that he omitted the information with reckless disregard of whether it would make the affidavit misleading."  *Id.* at 115.  It is insufficient to show that the affiant acted negligently or committed an "innocent mistake."  *Id.* (quoting *Miller v. Prince George's Cty.*, 475 F.3d 621, 627–28 (4th Cir. 2007)).  It is likewise insufficient to show merely that the affiant knowingly omitted the information.  *United States v. Colkley*, 899 F.2d 297, 300–01 (4th Cir. 1990) ("[A]n affiant

cannot be expected to include in an affidavit every piece of information gathered in the course of an investigation."). Rather, Anderson must show that the omissions were "*designed to mislead, or [were] made in reckless disregard of whether they would mislead*, the magistrate." *Id.* at 301. Recklessness in this context can be established by showing the officer acted "'with a high degree of awareness of [a statement's] probable falsity,' that is, 'when viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported.'" *Miller v. Prince George's Cty.*, 475 F.3d 621, 627 (4th Cir. 2007) (alteration in original) (quoting *Wilson v. Russo*, 212 F.3d 781, 788 (3d Cir. 2000)).

"With respect to omissions, 'reckless disregard' can be established by evidence that a police officer 'failed to inform the judicial officer of facts [he] knew would negate probable cause.'" *Id.* (alteration in original) (quoting *Beauchamp v. City of Noblesville, Inc.*, 320 F.3d 733, 743 (7th Cir. 2003)); *see also United States v. Reivich*, 793 F.2d 957, 961 (8th Cir. 1986) ("[R]ecklessness may be inferred from the fact of omission of information from an affidavit. Such an inference, however, is warranted only when the material omitted would have been 'clearly critical' to the finding of probable cause . . . ." (citations omitted)). In *Lull*, the Fourth Circuit found that omission of information weighing on an informant's reliability was "clearly relevant" to a probable cause determination—even more so where the affidavit "contained no other statement concerning the informant's credibility or experience working as a confidential informant." 824 F.3d at 117; *see also United States v. Simmons*, 771 F. Supp. 2d 908, 918 (N.D. Ill. 2011) ("Importantly, the lack of other indicia of reliability in this case makes these facts particularly 'critical' to the probable cause determination.").

Because Detective Bridges had obvious reason to question the accuracy of his affidavit, and the omitted material is "clearly critical" to the finding of probable cause, the court finds that Detective Bridges omitted facts from his affidavit with reckless disregard of whether his omission would make his affidavit misleading.[5]

### a. Failure to distinguish between CIs

In Attachment A to the affidavit, Detective Bridges first states that "your affiant" has "conducted" an investigation through which "your affiant has conducted multiple controlled purchases from Harold Anderson." (Dkt. No. 31-1 at 6.) Presumably, the affidavit refers to the two controlled buys conducted December 7, 2018, and December 11, 2018, by the first informant to aid the investigation (CI-1). (Hr'g. Tr. 31, 44, Dkt. No. 54.) Detective Bridges then proceeds to outline the PC buy that was conducted by a second informant (CI-2). (Dkt. No. 31-1 at 6.) However, the affidavit does not state or provide any information from which a magistrate could infer that two different CIs were involved. In particular, by omitting this information, Anderson is concerned that a reasonable magistrate would inaccurately assume that the same CI conducted all three buys, thus supporting the CI's reliability. (*See* Def. Reply Br. 2, Dkt. No. 35.)

At the hearing, Detective Bridges suggested that clarifying the distinct roles of CI-1 and CI-2 "would have only made the paper even stronger." (Hr'g Tr. 54.) Presumably, the government would argue that multiple controlled purchases by multiple CIs would strengthen a finding of probable cause. However, without any information suggesting that either CI-1 or CI-2

---

[5] The evidence in this case does not suggest that Detective Bridges affirmatively intended to mislead the magistrate. The evidence instead shows that Detective Bridges believed he followed RCPD policy and that his supervisor found his affidavit "consistent with search warrants [he had] approved and . . executed in the past." (Hr'g Tr. 104, Dkt. No. 54.) Nonetheless, Anderson need not show intent, but may instead show that Detective Bridges acted with reckless disregard of whether his affidavit would mislead the magistrate.

was reliable, the court disagrees and instead finds that the affidavit improperly overstates CI-2's reliability.

Because the affidavit primarily focuses on the PC buy, CI-2's reliability is a vital component to the finding of probable cause. As written, however, the affidavit suggests that the same CI conducted all the purchases from Anderson (or, as discussed below, that Detective Bridges himself conducted some of the controlled buys—a similarly misleading interpretation of the facts), which improperly bolsters the CI's reliability.[6] *See, e.g.*, *Crumb v. United States*, 166 F.3d 1213, 1998 WL 789375, at *2 (6th Cir. 1998) (finding that an informant's voluntary cooperation aiding in the issuance of thirty-three prior warrants supported the informant's reliability) (unpublished table decision); *United States v. Fairfax*, No. 7:05CR00104, 2006 WL 1149209, at *2 (W.D. Va. May 1, 2006) (considering an informant's prior cooperation in determining the informant's reliability).

Without a distinction between informants, Detective Bridges had clear reason to doubt the accuracy of his affidavit. A reasonable magistrate would easily rely on the first paragraph of Attachment A to conclude that the CI involved in the PC buy had a history of cooperation with the Department, especially considering that reliability information was otherwise lacking in the affidavit.

### b. *Misleading information about informant reliability*

The most troubling omission in the affidavit is the lack of any information weighing on the reliability of either confidential informant used in this case. After all, "[a]s an experienced

---

[6] The evidence presented at the *Franks* hearing further supports this finding. In his past affidavits, Detective Bridges has provided as evidence of a CI's reliability statements that the informants had previously cooperated with law enforcement. (Hr'g Tr. 18 ("[T]he reliable confidential informant has conducted numerous testifying purchases of narcotics that have led to federal and state convictions. The confidential informant has been a reliable informant since 2011."); *id.* at 25 ("[T]he CI . . . has provided the Roanoke City Police Department with two felony drug arrests.").) Thus, Detective Bridges understood that a history of successful cooperation would reflect on an informant's reliability and credibility in the eyes of a magistrate.

investigator, [Detective Bridges] would surely know that reliability is 'key' to a magistrate's probable cause analysis when the search warrant application contains information provided by an informant." *Lull*, 824 F.3d at 117.

First, to the extent a magistrate could distinguish the roles of CI-1 and CI-2, the magistrate would have no information regarding CI-1's reliability. Notably, after CI-1's second controlled buy, Detective Bridges found suboxone pills that had not been disclosed prior to the buy or found in the preliminary search of CI-1. Detective Bridges testified that he did not question CI-1's reliability, as CI-1 later admitted he possessed the pills with the intention of giving them to someone else. Additionally, CI-1 continued to work with the Department as a CI after that incident and even after a subsequent arrest. (Hr'g Tr. 40–42, 49–50.) Nonetheless, these circumstances were not disclosed to the magistrate in this search warrant application.

The parties dispute the relevance of CI-1's reliability on the instant warrant application. However, as the court previously stated, "not only does the first CI's possession of narcotics during one of the earlier controlled buys weaken the overall reliability of the information in the affidavit, but Detective Bridges' knowing omission of this important information calls into question whether he recklessly disregarded that it could mislead the magistrate." (Mem. Op. at 5–6, (citing *Lull*, 824 F.3d at 116).). Moreover, because the court finds CI-2 unreliable based on the omitted information, *see infra* pp. 16–21, CI-1's reliability directly impacts the weight of the prior controlled buys, which might otherwise corroborate CI-2's information.

Second, and more importantly, the affidavit gives no reliability information about CI-2. At the *Franks* hearing, Detective Bridges testified regarding the events leading up to the use of CI-2. Almost two months after the detectives' last controlled buy using CI-1, and on the same date that CI-2 was used to make the PC buy, Detective Bridges began conducting surveillance at

Anderson's home. There officers observed CI-2 leave the back seat of a vehicle, enter and exit the home, and leave in the same car. Officers then stopped the vehicle. (Hr'g Tr. 50.)

Notably, Detective Bridges testified that "[t]he vehicle had the odor of marijuana coming from it, as well as the individuals in the vehicle. We searched [CI-2]. We located a small amount of what appeared to be meth." (*Id.* at 51.) "In the back seat where [CI-2] was sitting, there was a lunchbox, and inside that lunchbox was assorted ammunition . . . ."[7] (*Id.*) When asked about the meth, CI-2 answered "that they allowed someone earlier at work that day to wear their sweatshirt and they must have left the meth in it." (*Id.* at 52.) Although Detective Bridges testified that he did not "have any reason to be concerned about CI-2's reliability" or "have any information whatsoever that would lead [him] to question CI-2's reliability," (*id.* at 72), there is no indication that he had ever met CI-2 before the traffic stop and he further testified that he did not "necessarily believe" CI-2's answers about the meth found in his sweatshirt, (*id.* at 88; *see also id.* at 12 ("Q: So the informant not only was caught committing a felony in the course of this operation, but also had lied to you. A: Essentially, yes, sir.")). Moreover, when asked if he knew whether CI-2 was "under the influence of any narcotic at that time," Detective Bridges answered that he "[d]id not believe so. I mean, there was obviously odor of marijuana. They could have been smoking weed, so he could have been under the influence of that, but not for me to be able to actually say I'm sure." (*Id.* at 96.) Yet, "roughly an hour and a half to two hours later" Detective Bridges had CI-2 conduct a controlled buy. (*Id.*)

Furthermore, no context was provided as to how CI-2 agreed to conduct the controlled buy.[8] As Anderson points out, "the informant had been caught with drugs and ammunition and

---

[7] Detective Bridges testified that CI-2 was not "able to possess ammunition lawfully." (Hr'g Tr. 51.)

[8] The testimony did not reveal whether the officers or CI-2 first brought up Anderson. When asked whether the individual mentioned purchasing narcotics from Anderson, Detective Bridges testified, "[t]hat question was asked, and that individual stated they did not just buy anything from Mr. Anderson." (Hr'g Tr. 52.) He further

no doubt was eager to avoid being charged by cooperating against Mr. Anderson." (Def. Suppl. Br. 19–20, Dkt. No. 56.) *See Williamson v. United States*, 512 U.S. 594, 607–08 (1994) ("A person arrested in incriminating circumstances has a strong incentive to shift blame or downplay his own role in comparison with that of others, in hopes of receiving a shorter sentence and leniency in exchange for cooperation."). Certainly, it would weigh on CI-2's reliability that he had never before worked in cooperation with the Department and that he did so only after being stopped while engaging in criminal activity.

None of the foregoing was included in the search warrant application. There was no mention of the odor of marijuana, the temporal proximity between detecting the odor and the controlled buy, the meth found in the CI's sweatshirt, the ammunition, or the potential incentive the CI had to cooperate with the officers. Granted, "drug abusers who cooperate with law enforcement officers are notoriously unreliable human beings, burdened as they typically are with . . . addictions, debts incurred to service those addictions, and criminal convictions." *Lull*, 824 F.3d 120–21 (Davis, J. concurring in part and dissenting in part). But Detective Bridges acknowledged that "when the information forming the basis of probable cause comes from an informant, information regarding the reliability of the informant is absolutely critical." (Hr'g Tr. 27.) *See also United States v. Wilhelm*, 80 F.3d 116, 119 (4th Cir. 1996) ("Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others." (quoting *Illinois v. Gates*, 462

---

stated that "Mr. Anderson was brought up," without saying by whom. (*Id.* at 94.) If Detective Bridges or a fellow officer prompted CI-2 to cooperate against Anderson, such pressure would undoubtedly increase the skepticism with which a magistrate would view the operation. *See Simmons*, 771 F. Supp. 2d at 917 ("It is well-established that a newly-arrested informant 'merits a greater dose of skepticism when assessing his credibility.'" (quoting *United States v. Olson*, 408 F.3d 366, 370 (7th Cir. 2005))).

U.S. 213, 239 (1983))).  Thus, after omitting information regarding the CIs' reliability, Detective

Bridges had obvious reason to doubt the accuracy of his affidavit.

### c.  Inclusion of Detective Bridges' reliability

Not only did Detective Bridges fail to include any indicia of reliability for the CIs, but he

also affirmatively answered the reliability questions in the search warrant application with

information about his own personal credibility.  Under the heading that states, "[t]his informer's

credibility or the reliability of the information may be determined by the following facts,"

Detective Bridges stated how long he had worked for the Department, his experience as a patrol

officer and with the vice unit, and his current role in the Department.  (Dkt. No. 31-1 at 5.)

When asked why he included his own experience, Detective Bridges reasoned that "[f]or this

informant, being the informant's first time and me doing anything, I had no necessary or any

reliability to put in that section," suggesting that this was common practice for first-time CIs.[9]

(Hr'g Tr. 67.)  Yet, the government did not present to the court any other examples consistent

with this practice.  Conversely, Anderson presented several affidavits from prior cases as

exhibits in which Detective Bridges set out reliability and credibility information about his

confidential informants.[10]

---

[9] Detective Bridges further testified that he was concerned about protecting CI-2's privacy as a confidential informant and thus limited the information he provided to only that necessary to establish probable cause.  The basis for omitting information about CI-2, he stated, was that the state publishes warrants so that any member of the public may review the information, jeopardizing the ongoing investigation.  (Hr'g Tr. 71.)  There is an obvious error with this reasoning—the distinction between state and federal warrant applications does not change the requirements for establishing probable cause or alleviate an applicant from providing reliability information about his informants. *See Simmons*, 771 F. Supp. 2d at 920 (finding that the privilege to withhold information to protect the safety of an informant "is not a blank check for police officers to unilaterally decide that all information pertaining to a confidential informant can be omitted from a complaint, especially when that information weighs against a finding of probable cause").

[10] Although the government suggests the Department includes different reliability information for different types of warrant applications, any warrant application necessarily requires sufficient facts for a magistrate to make a determination as to whether probable cause exists.  As Detective Bridges acknowledged, "when information [is] used to acquire a warrant that's based on an informant, . . . the magistrate is entitled to the credibility information, the reliability information."  (Hr'g Tr. 85.)

Read in conjunction with Attachment A to the affidavit, the facts regarding Detective Bridges' reliability are further misleading. Anderson emphasizes that Detective Bridges misled the magistrate by writing "your affiant has conducted a narcotic investigation" and "your affiant has conducted multiple controlled purchases." (Def. Suppl. Br. 8.) He argues that Detective Bridges' use of the noun "your affiant" instead of "an informant" is misleading to the magistrate. (Hr'g Tr. 12–13.) Alone, the court does not believe the language is misleading. Although Detective Bridges "definitely could have worded [his affidavit] better by saying 'your affiant used a confidential informant to conduct the controlled purchases,'" he chose the word "conduct" because it is "typical lingo" used to indicate that he led a particular investigation or purchase. (*Id.* at 22.) The word choice is ambiguous in this instance, but the evidence does not indicate that Detective Bridges intended to mislead the magistrate with that phrase or that use of the word "conducted" was reckless.

Nonetheless, the tendency of this vague language to mislead is exacerbated by the use of Detective Bridges' own reliability information. Ultimately, a reasonable magistrate could interpret the affidavit to mean that Detective Bridges, and not an informant, collected the relevant information.[11]

\*     \*     \*

Taken individually, some of the omissions in Detective Bridges' affidavit are merely innocent or negligent mistakes. However, the totality of the circumstances and, particularly, the omission of any information regarding the reliability of either informant, indicate that Detective

---

[11] Admittedly, this interpretation of the affidavit would conflict with the interpretation discussed above—that the same CI conducted all of the controlled purchases. But the fact that a magistrate could reasonably reach several different conclusions regarding the information presented in the affidavit highlights the ambiguity at issue. Moreover, either interpretation would present the magistrate with a skewed and inadequate picture of CI-2's reliability. Significantly, the one interpretation made nearly impossible by the language of the affidavit is the one reflecting what actually occurred—that CI-1 conducted two controlled purchases and CI-2 conducted only the PC buy.

Bridges acted with reckless disregard of whether the omissions would make the affidavit misleading.

In *Lull*, the Fourth Circuit suppressed evidence obtained pursuant to a search warrant that similarly omitted reliability information. The affidavit at issue there merely "recounted the controlled buy and concluded with [the investigator's] statement that, based on his training and experience, he would expect to find a number of items in Lull's home relating to drug trafficking." *Lull*, 824 F.3d at 113. Like here, the affidavit did not include any statement of the informant's reliability or previous experience as an informant and specifically omitted information that would obviously have weighed negatively on the informant's credibility. Accordingly, the Fourth Circuit found that the investigator recklessly omitted the information, noting that it was "clearly relevant" to the magistrate's determination. *See id.* at 117.

Here, Detective Bridges recounted multiple facts indicating that CI-2 may not have been reliable: the "obvious" odor of marijuana emanating from the car in which CI-2 was a passenger; Detective Bridges' impression that CI-2 was not telling the truth when questioned about the origin of the drugs in his sweatshirt; the presence of methamphetamine and ammunition; the temporal proximity of the controlled buy to the traffic stop; and the fact that CI-2 had never previously worked with the Department. Yet, when completing his affidavit, Detective Bridges omitted these facts. In fact, Detective Bridges did not include *any* discussion of either CI's reliability. The omission of such critical information is clearly relevant to a finding of probable cause.[12]

---

[12] Detective Bridges' testified that further conversations with CI-2 allowed him to corroborate the information CI-2 gave him. However, the question of whether an informant is reliable "is an assessment that is for the magistrate, not [the investigator], to make." *Lull*, 824 F.3d at 116.

The court's conclusion is further supported by the reasoning of the Northern District of Illinois in its analogous case of *United States v. Simmons*. In *Simmons*, the Chicago Police Department obtained a search warrant based on information provided by a confidential informant. After arresting an informant for drug-related activity, officers "asked the CI if there was anything he could do 'to get himself out of the situation he was in.'" *Simmons*, 771 F. Supp. 2d at 913. Believing he would otherwise be charged for possession of heroin, the informant told the officers he could identify drug houses or houses in which he had seen firearms. The officers obtained a warrant based on the informant's information. *Id.*

The defendant challenged the validity of the warrant, asserting that the officers omitted the facts that the information was "based on the claims of a first-time confidential informant of unknown reliability, who was under arrest at the time he gave the statement, and had an extensive criminal history that included lying to the police." *Id.* at 915. The court granted the defendant's motion to suppress. It noted that "the omitted facts strongly detract from the reliability of the CI—the sole source of the inculpatory information in the complaint." *Id.* at 917. It further recognized that "the lack of other indicia of reliability in this case makes these facts particularly 'critical' to the probable cause determination." *Id.* at 918.

Similarly, here, Detective Bridges omitted the fact that CI-2 was a first-time CI who agreed to cooperate with the investigation only after officers discovered methamphetamine in his sweatshirt, ammunition at his feet, and the odor of marijuana emanating from the vehicle in which he was a passenger. Undoubtedly, CI-2 was under the impression that, but for his cooperation, he would be arrested. And, while the evidence here did not show that CI-2 had a criminal history involving lying to police, Detective Bridges indicated that he did not believe CI-2's statements during the traffic stop.

Like in *Simmons*, "the cumulative effect of all of the omissions was to eliminate nearly every indicator detracting from the CI's reliability." *Id.* When reviewing his affidavit, it should have been obvious to Detective Bridges that the selective inclusion of supporting facts created an inaccurate report of the circumstances. Accordingly, Anderson has succeeded in showing by a preponderance of the evidence that Detective Bridges acted with reckless disregard of whether his omission would make the affidavit misleading and has satisfied the intentionality prong of the *Franks* test.

### 2. Materiality

Next, the court must determine whether the facts Detective Bridges omitted from his affidavit were material to the probable cause determination. "[T]o be material under *Franks*, an omission must do more than potentially affect the probable cause determination: it must be 'necessary to the finding of probable cause.'" *Colkley*, 899 F.2d at 301. In reviewing materiality, the court must consider the "totality of circumstances" by evaluating "the affidavit as a whole and all circumstances set forth within." *Lull*, 824 F.3d at 118 (citing *Gates*, 462 U.S. at 233).

At this stage, "a court must 'excise the offending inaccuracies and insert the facts recklessly omitted, and then determine whether or not the 'corrected' warrant affidavit would establish probable cause." *Miller*, 475 F.3d at 628. Where information in the affidavit is based on an informant's report, the court must also determine whether "the informant's demonstrated unreliability undermined his credibility and the veracity of his statements presented in the warrant application." *Lull*, 824 F.3d at 118. If the magistrate would have found the informant unreliable had the omitted information been included, the court must then excise the information provided exclusively by the informant to determine whether information remaining in the

affidavit supports a finding of probable cause.  *Id.*; *see also United States v. Wharton*, 840 F.3d 163, 169 (4th Cir. 2016).  The court will first consider whether the omitted material would have led a reasonable magistrate to find CI-2 or CI-1 unreliable.  Ultimately, applying this framework to Anderson's case, the court finds that the information omitted from Detective Bridges' search warrant affidavit was material to the magistrate's probable cause determination.

a.  *Effect on reliability*

"Because '[i]t is well settled that probable cause may be founded upon hearsay and information received from informants,' a judicial officer's assessment of probable cause based upon the totality of the circumstances must include a review of 'the veracity and basis of knowledge of persons supplying hearsay information.'"  *United States v. Perez*, 393 F.3d 457, 461–62 (4th Cir. 2004) (alteration in original) (citations omitted) (internal quotations omitted) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *United States v. DeQuasie*, 373 F.3d 509, 518 (4th Cir. 2004)).  "Certainly, an informant's reliability may also be bolstered by '[t]he degree to which [the] informant's story is corroborated."  *Id.* at 462 (alterations in original) (quoting *United States v. Hodge*, 354 F.3d 305, 309 (4th Cir. 2004)).  However, the court is limited to considering only the information presented to the magistrate.  *Lull*, 824 F.3d at 119 n.3; *Perez*, 393 F.3d at 462 ("[T]he court should examine the totality of the information *presented to the magistrate . . . .*" (emphasis added)); *see also infra* note 16 (explaining the rationale for the rule).

Here, the magistrate had absolutely no information about the reliability or credibility of anyone except Detective Bridges.  Thus, the omitted material obviously affected the magistrate's reliability determination.  As in *Simmons*, the PC buy was the first time CI-2 cooperated with police and acted as an informant.  As a result, CI-2 was previously untested and lacked

reliability—a fact Detective Bridges himself acknowledged when he provided reliability information about himself instead of his informant.  Importantly, the court notes that Detective Bridges not only omitted this information, but also included the fact that multiple controlled purchases were conducted prior to the PC buy—presumably either by Detective Bridges or the same CI.  As discussed above, the ambiguous discussion of prior controlled buys likely misled the magistrate into believing the CI used for the PC buy had previously worked with investigators.

Additionally, CI-2, who had never previously worked with the Department, offered to cooperate only after a traffic stop in which officers smelled the odor of marijuana, found meth in CI-2's sweatshirt, and found ammunition near him.  Presumably, CI-2 agreed to cooperate in an attempt to avoid criminal charges.  CI-2 also denied ownership of the meth—a statement Detective Bridges testified he did not believe.  And, while indications that CI-2 may have been under the influence of marijuana are likely insufficient on their own to negate probable cause, *see United States v. Braden*, 248 F. App'x 700, 2007 WL 2781148, at *3 (6th Cir. 2007) (unpublished table decision) (finding that although an informant smoked meth prior to offering a tip, she was not necessarily unreliable and that, in fact, "those same factors can make a witness more inclined to be truthful than they otherwise might" (quoting *Hale v. Kart*, 396 F.3d 721, 730 (6th Cir. 2005))), they nonetheless combine with the rest of the facts to indicate that CI-2 was not reliable.[13]

---

[13] In support of the adequacy of his affidavit, Detective Bridges testified that he "continued interviewing [CI-2] and corroborating the information that they [gave]."  (Hr'g Tr. 88.)  He ultimately concluded that he had no "information whatsoever that would lead [him] to question CI-2's reliability."  (*Id.* at 72.)  In *Lull*, however, the court refused to consider corroborating evidence at the *Franks* hearing where that evidence was not mentioned in the affidavit presented to the magistrate.  Detective Bridges' affidavit did not include any statement that he corroborated CI-2's information or how; thus, the court will not consider it here.

At first glance, the lack of any information weighing on CI-2's reliability seems likely overcome by Detective Bridges' corroborating statement in the first paragraph of Attachment A regarding the first two controlled buys. Importantly, however, once the court corrects the misleading portion of that paragraph—either by substituting "your affiant" with "CI-1" or "conducted" with "supervised"—it becomes clear that the basis of the purportedly corroborating information is not Detective Bridges, but CI-1.[14]  In either case, the affidavit contains no "affirmative allegation that the agent spoke with personal knowledge nor did it indicate any sources for the agent's conclusion." *Illinois v. Gates*, 462 U.S. 213, 276 (1983); *see also Giordenello v. United States*, 357 U.S. 480, 486 (1958) ("The [magistrate] must judge for himself the persuasiveness of the facts relied on by a complaining officer to show probable cause. He should not accept without question the complainant's mere conclusion that the person . . . has committed a crime.").  The affidavit would read as though either CI-1 had personal knowledge that Anderson was the seller, or Detective Bridges had indirect knowledge from whoever conducted the purchase. Thus, if the magistrate were to exclude CI-2's information, he or she would undoubtedly also have to consider the reliability of the CI who engaged in the controlled buys and actually identified Anderson as the seller.

Significantly, the affidavit included no information bearing on CI-1's reliability. In fact, it included no mention whatsoever of a different CI's involvement. Based on the affidavit, no magistrate could conclude that CI-1 even existed, much less participated in Detective Bridges' investigation. Nor did Detective Bridges include any mention of information that might

---

[14] Based on the discussion above, the affidavit could read either "your affiant has [supervised] multiple controlled purchases from Harold Anderson" or "[CI-1] has conducted multiple controlled purchases from Harold Anderson."  (Dkt. No. 31-1 at 6.)

corroborate CI-1's information or raise Detective Bridges' statements above the threshold of a "mere conclusion."[15]

Based on the foregoing, the court finds that the totality of the circumstances support a conclusion that CI-2 was not a reliable informant. Moreover, the lack of information regarding CI-1 or the first two controlled buys "prevent[] a neutral magistrate from being able to accurately assess the reliability and the veracity, and thus the significance, of [CI-1's] statements." *Lull*, 824 F.3d at 118; *see also United States v. Glover*, 755 F.3d 811, 814 (7th Cir. 2014) ("We conclude that the affidavit provided an insufficient basis for the search warrant. It omitted all information regarding the informant's credibility. That undermined the issuing magistrate's ability to perform his role as a neutral arbiter of probable cause."). Although reliability is not the

---

[15] Detective Bridges testified that among the controls for the first two buys were both video and audio recordings of the purchases. He testified that he watched video that revealed Anderson was the seller—a fact that would certainly add credibility to the overall affidavit and likely result in a finding of probable cause. However, the court cannot consider that newly introduced video or Detective Bridges' testimony when reviewing the sufficiency of his affidavit under *Franks* because that information was never presented to the magistrate. *Lull*, 824 F.3d at 119 n.3.

The court finds it relevant here to discuss the application of footnote three in the Fourth Circuit's *Lull* decision. The Fourth Circuit states both that a court cannot consider information outside the four corners of the warrant application and that it must consider the effect omitted information would have on the magistrate's determination. *Id.* In so stating, it appears the court may consider information detrimental to a probable cause determination but must ignore rehabilitating information.

For example, in *Lull*, the investigator testified that he heard and recognized the defendant's voice on an audio transmission of the controlled buy, which would have corroborated the informant's information. *Id.* The court declined to consider the investigator's testimony and found that after taking into account the remaining omitted information—that the informant stole from police during the controlled buy—the informant would have been found unreliable. Had the investigator in *Lull* included the omitted information, he likely also would have included his own corroborating information to support the informant's information. Yet, the *Lull* court declined to consider the corroborating audio.

As the Supreme Court has noted, allowing broader review of omitted information would "render the warrant requirements of the Fourth Amendment meaningless." *Whiteley v. Warden*, 401 U.S. 560, 565 n.8 (1971). Without this rule, court review of a warrant's sufficiency could allow officers to submit inadequate warrant applications and then assert post-hoc rationalizations regarding an informant's reliability if the ensuing warrants are challenged. Moreover, the rule deters an affiant from making reliability determinations on his own as was done in this case. With this rule in place, officers are on notice that they must include reliability information in their applications or risk suppression of evidence obtained therefrom. While "[a]n affiant cannot be expected to include in an affidavit every piece of information gathered in the course of an investigation," *Colkley*, 899 F.2d at 300, it nonetheless remains the neutral magistrate's responsibility to determine whether information is sufficiently reliable to support probable cause, *see Franks*, 438 U.S. at 165. Thus, the affiant must provide sufficient information for the magistrate to make a reliability determination at the search warrant stage rather than waiting until the warrant is challenged.

only factor to be considered, the Fourth Circuit has held that "a judicial officer's assessment of probable cause . . . must include a review of the 'veracity' and 'basis of knowledge' of persons supplying hearsay information." *Perez*, 393 F.3d at 461–62. Because the affidavit provided no information whatsoever about CI-1, the magistrate did not have sufficient information to evaluate CI-1's veracity or basis of knowledge.[16]

Detective Bridges did not set forth any particular details supporting the purportedly corroborating information in the first paragraph of Attachment A. Rather, once the affidavit is corrected by omitting the inaccurate portions and inserting the recklessly omitted facts, it includes only information supplied by CI-1 and CI-2. Finding that CI-2 is inherently unreliable and that no magistrate could accurately assess CI-1's reliability, veracity, or basis of knowledge, the court concludes that it must make a determination on the *Franks* materiality prong without reference to the information provided by either informant.

### b. Materiality

Having found that CI-2 was not reliable and that Detective Bridges' omissions effectively precluded any magistrate review of CI-1's reliability, the court must excise their statements from the affidavit, *Wharton*, 840 F.3d at 169, and determine whether "there remains insufficient information from which to find probable cause," *Lull*, 824 F.3d at 118. *See also Miller*, 475 F.3d at 628. If a reasonable magistrate could not find probable cause after including the omitted facts, those facts are material to the determination. *Lull*, 824 F.3d at 118. Because the information reported by CI-1 and CI-2 provided the only link in the affidavit between the controlled buys and

---

[16] The court notes that information about CI-1's possession of suboxone, had it been in the affidavit, certainly would have cast doubt on CI-1's credibility. But even without that damaging information, the magistrate lacked information about CI-1's reliability sufficient to rely on CI-1's hearsay statements to support a finding of probable cause.

Anderson, the court finds that the omissions from Detective Bridges' affidavit were material to the magistrate's finding of probable cause.

Excluding information obtained by CI-1 and CI-2, the affidavit contains the following relevant facts: Detective Bridges conducted a two-month investigation into Anderson's alleged distribution of narcotics, including multiple controlled buys; Detective Bridges "used a Confidential Informant (CI) to purchase a quantity of Heroin" from Anderson's address; Detective Bridges searched the informant who conducted the PC buy before the purchase and found no illegal narcotics or money; officers observed that informant entering the front door of the residence and exiting a while later; and that informant returned with "a brown substance consistent with Heroin" which tested positive using a field test kit. (Dkt. No. 31-1 at 6.) The facts clearly indicate that CI-2 entered Anderson's home and purchased drugs while inside. However, the only indication in the affidavit that Anderson was the seller during the PC buy came from CI-2, and the only other source for identifying Anderson as a narcotics dealer was CI-1. (*Id.* ("[CI-1] conducted multiple controlled purchases from Harold Anderson. . . . The CI advised your affiant that once inside the residence to be searched that the Heroin was sold to them by who they know as Harold Anderson.").)

The Fourth Circuit has previously acknowledged that "the nexus between the place to be searched and the items to be seized may be established by the nature of the item and the normal inferences of where one would likely keep such evidence." *United States v. Lalor*, 996 F.2d 1578, 1582 (4th Cir. 1993). However, such "inference is contingent on the connection between the drug trafficker and his or her residence." *Lull* 824 F.3d at 119. Where there is a lack of information about the identity of the seller, it "creates an obvious problem: if a non-resident had been the individual who had sold drugs to the informant . . . there would be no reason to believe

that, hours later, there would be drug contraband or financial records of drug transactions in [the] residence." *Id.*

Detective Bridges purportedly attempted to corroborate CI-2's report by writing that he "conducted multiple controlled purchases from Harold Anderson" at the same address. To be sure, "[i]n cases in which the police similarly omitted one of these facts, courts have upheld the warrants despite the omission . . . when there were detailed statements by the informants, significant corroboration by the police, or other indicators regarding the informant's reliability . . . ." *Simmons*, 771 F. Supp. 2d at 918; *see also United States v. Wilhelm*, 80 F.3d 116, 119 (4th Cir. 1996) ("[I]n evaluating whether an informant's tip establishes probable cause, the degree to which the report is corroborated is an important consideration."). However, statements of corroboration made in support of the search warrant application are insufficient where the affidavit contains "no affirmative allegation that the agent spoke with personal knowledge [or] any sources for the agent's conclusion." *Gates*, 462 U.S. at 276. Here, there is no indication in the affidavit of the sources of Detective Bridges' corroborating statement. In fact, the affidavit suggests, misleadingly, that Detective Bridges himself identified Anderson as the seller. At the *Franks* hearing, however, Detective Bridges clarified that CI-1 conducted the first two controlled buys. After correcting the affidavit to include that information, and having found that the magistrate did not have sufficient information to evaluate CI-1's credibility, the affidavit does not support a finding of probable cause.

Detective Bridges could have included facts regarding reliable sources for the corroborating information. For example, the government made much of audio and visual recordings from the first two controlled buys. Such information would support Detective Bridges' assertion that Anderson was the seller during the earlier purchases. Like in *Lull*,

however, the affidavit did not include any of that information, and the court cannot consider it now.[17]

Ultimately, there is too much information missing from the affidavit for a magistrate to obtain a clear picture of the facts necessary for a probable cause determination. The story in the affidavit simply is not accurate, and while Detective Bridges' testimony indicates that he could have corroborated the facts provided by CI-1 or CI-2, he failed to do so in his affidavit. Having removed from consideration the information provided exclusively by CI-1 and CI-2, the affidavit does not provide an adequate basis for identifying Anderson as the seller during the PC buy or prior controlled buys, negating probable cause. Detective Bridges may have been able to identify Anderson's house based on his ongoing investigation, but he cannot confirm that Anderson was the seller in this instance so as to establish the likelihood that evidence of drug transactions remained in the home—a key link to the probable cause determination.

\*     \*     \*

Having found that the information omitted from Detective Bridges' affidavit was material to the magistrate's finding of probable cause, the court finds that Anderson met his burden on the materiality prong of the *Franks* analysis by a preponderance of the evidence.

### III. CONCLUSION

For the reasons set forth above, the court finds that Detective Bridges omitted material facts from his affidavit with reckless disregard for whether his omission made the affidavit in

---

[17] Contrasting this case with the Eighth Circuit case of *United States v. Reivich*, 793 F.2d 957 (8th Cir. 1986), may help illustrate why Detective Bridges' corroborating information was insufficient in this case. In *Reivich*, the court found that because officers partly corroborated the informant's story, the omissions at issue were not fatal to the finding of probable cause. However, unlike the present case, the corroborative circumstances in *Reivich* "were set out in the affidavit with sufficient particularity that the judicial officer's decision to issue the warrant constituted an exercise of independent judgment and was not just a rubber-stamping of conclusory police statements." *Id.* at 960. Detective Bridges' affidavit merely asserted in conclusory fashion that he had conducted controlled buys from Anderson. He gave no accurate indication of his source that Anderson was the seller or any facts regarding his source's credibility.

support of his search warrant application misleading.  Accordingly, the court will grant

Anderson's motion to suppress the evidence obtained pursuant to that search warrant.  An

appropriate order will be entered.

Entered: January 16, 2020.


*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge